IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN J. KELLY,

            Appellant,

v.

PETER FLATLAND HERRELL, UNITED
STATES TRUSTEE AND JERRY JOHNSON
REVOCABLE TRUST,

            Appellees.

OPINION AND ORDER

20-cv-805-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN J. KELLY,

            Appellant,

v.

BERNARD CHARLES SEIDLING,
CHRISTINE ANN SEIDLING, PETER FLATLAND
HERRELL, DANIEL R. FREUND, ROBERT C. MEYER,
SUNSHINE FAMILY LIMITED PARTNERSHIP,
OAKRIDGE FAMILY LIMITED PARTNERSHIP,
C&A INVESTMENTS, MIDWEST FINANCIAL,
FOUR STAR PROPERTIES, INC., OASIS FAMILY
LIMITED PARTNERSHIP, JERRY JOHNSON REVOCABLE
TRUST AND PATRICK S. LAYNG,

            Appellees.

OPINION AND ORDER

20-cv-806-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      These cases arise out of an involuntary petition filed on December 12, 2002 under chapter 7 of the Bankruptcy Code against debtor Brian Kelly. Over the past 19 years, the appellants, Kelly and his father, Paul Kelly, have filed numerous appeals in the Bankruptcy Court for the Western District of Wisconsin, in this court and in the Court of Appeals for

the Seventh Circuit. Now before the court in cases 20-cv-805 and 20-cv-806 is the appeal of the final decree entered by the bankruptcy court on August 20, 2020, pursuant to a hearing held on August 19, 2020, at which the bankruptcy court ruled on various motions and approved trustee Peter Herrell's sale of appellant's farm. Case no. 20-805, dkt. #4; case no. 20-806, dkt. #3. For the reasons set out below, I am dismissing the appeals in both cases.

As a preliminary matter, it is necessary to address the role of Paul Kelly in this litigation. In the underlying bankruptcy case, the Court of Appeals for the Seventh Circuit held that Paul Kelly was not a proper appellant because he did not have a cognizable interest in the Chapter 7 estate, was not legitimately involved in the bankruptcy case and had failed to explain how any ruling of the bankruptcy court injured him in any way that the court could correct. Kelly v. Herrell, 602 Fed. Appx. 642, 645 (7th Cir. 2015). Because the reasons for the court of appeals' holding are also true for case no. 20-cv-806, I have removed Paul Kelly's name from the caption of that case.

The following facts are drawn from the bankruptcy court record (Bankr. dkt.), Bankr. Case No. 02-18037, unless noted otherwise. Because these cases have an exhaustive procedural history spanning almost 20 years, only those events relating to the issues raised on appeal are summarized below.

BACKGROUND

On December 12, 2002, C&A Investments, Midwest Financial and Peoples Bank of Wisconsin filed an involuntary petition under Chapter 7 of the Bankruptcy Code against appellant Brian Kelly. The petition named Bernard Seidling as Midwest Financial's representative and Seidling's wife as the representative of C&A Investments. Kelly, 602 Fed. Appx. at 644. The bankruptcy estate's only asset was 156 acres of farm land in Dunn County, Wisconsin. Bankr. dkt. #501 at 3.

Appellant unsuccessfully moved to dismiss the involuntary petition, arguing, among other things, that Midwest Financial's claim was "a sham" and purchased for the sole purpose of commencing the bankruptcy case. Bankr. dkt. ##3, 10. In 2014, appellant filed an appeal of the bankruptcy court's decision, but this court held that it lacked jurisdiction over the appeal because it was untimely. Kelly v. Herrell, No. 13-cv-633-bbc, 2014 WL 1055134, at *3 (W.D. Wis. Mar. 29, 2014). The Court of Appeals for the Seventh Circuit affirmed, explaining that the denial of appellant's motion to dismiss was either a final order and thus time-barred or interlocutory and not yet appealable. Kelly, 602 Fed. Appx. at 647. The court of appeals further noted that regardless of the merit of appellant's argument, C&A Investments could have purchased the debt on its own because it had an undisputed judgment for $22,000 and appellant had fewer than 12 creditors. Id.

On January 10, 2017, Peter Herrell, the Chapter 7 bankruptcy trustee, filed a motion seeking authority to sell appellant's farm to the Jerry Johnson Revocable Trust for the sum of $44,000. Bankr. dkt. #335. On January 31, 2017, appellant filed an objection to the

3

sale, alleging in part that the events leading up to the involuntary petition, the involuntary petition itself and the subsequent involuntary proceeding were all tainted with fraud because the trust was another "sham entity" created by appellee Seidling to buy appellant's farm for pennies on the dollar. Bankr. dkt. #336, #357 at 3.

After holding a hearing and considering the lengthy briefs filed by the trustee, appellants and other parties, bankr. dkt. ##350-57, the bankruptcy court issued a written decision on October 5, 2017. Bankr. dkt. #357. It concluded that "the [t]rustee should be authorized to sell the real estate to the proposed purchaser pursuant to a trustee's deed, subject to all liens, claims, and encumbrances and without the requested findings" and that "[t]he proposed purchaser can decide if the conveyance is sufficient to give it the title it needs," "whether it wants to go forward with the purchase and resort to a state court action to clear title, or to forgo the purchase." Id. at 9. The bankruptcy court declined to consider appellant's fraud arguments, concluding that they had been raised and rejected in previous bankruptcy proceedings. Id. at 3-4.

Appellant appealed the sale order, which was affirmed by this court on July 13, 2018 in case no. 17-cv-793, 2018 WL 3421320, and by the court of appeals in Kelly v. Herrell, 781 Fed. Appx. 529 (7th Cir. 2019). Although appellant referred to "what [he] believe[d] to be fraud involving the filing of the bankruptcy petition and potential sale of the farm, [he made] clear that [he was] raising only one issue on appeal: whether the bankruptcy court entered the October 2017 order without proper notice and a fair hearing, in violation of [his] rights under the due process clause." 2018 WL 3421320 at *3. See also Kelly, 781 Fed.

4

Appx. at 532 (explaining that appellant did "not challenge the validity of the sale, only the purported lack of notice").

On November 1, 2019, about three months after the court of appeals's decision affirming the sale order, the United States Trustee filed a motion to compel abandonment and close the bankruptcy case on the ground that Herrell had not heard from the Johnson Trust, there was no evidence that the trust had obtained a title commitment and Herrell had not identified another willing purchaser for the farm. Bankr. dkt. #448. The United States Trustee asked the bankruptcy court to order Harrell to abandon the estate's interest in the farm, which would revert to appellant. Appellant moved to dismiss the case on the same ground, arguing that the trust was a nonexistent entity and the alter ego of Seidling. Bankr. dkt. #450. Herrell responded that he agreed with appellant. Bankr. dkt. #455.

On November 21, 2019, Seidling objected to appellant's motion to dismiss on behalf of Midwest Financial and Midwest Financial II ("an assignee of C&A investments"), stating that a title commitment was requested but the title company "is still considering whether or not to issue" it. Bankr. dkt. #456. Seidling requested more time to obtain a title commitment or to clear the title in some other manner. Id. Herrell responded on January 6, 2020 that C&A Investments and Midwest Financial had obtained a title commitment and intended to proceed with the sale and close it. Bankr. dkt. #468. In his reply, the United States Trustee argued that corporations must be represented by counsel, but no counsel had appeared on behalf of Midwest Financial, Midwest Financial II, C&A Investments or the Johnson Trust. Bankr. dkt. #469.

On January 16, 2020, James Sweet, a lawyer, entered an appearance on behalf of the Johnson Trust. Bankr. dkt. #481. Appellant objected, arguing that Sweet and his wife, Catherine Furay, Chief Bankruptcy Judge for the Western District of Wisconsin, and D. Alexander Martin, whom appellant asserted had practiced in Sweet's former firm, had all represented appellant previously in the bankruptcy case. Bankr. dkt. #484.

On January 17, 2020, the bankruptcy court held a hearing on the United States Trustee's abandonment motion and appellant's motion to dismiss. Case no. 20-805, dkt. #13-1 at 125-39. At that hearing, Herrell and Sweet represented that all necessary steps had been taken to complete the sale. The United States Trustee stated that he had received the assurances that he was looking for regarding the sale and no longer objected to it but would like the supplemental sales agreement to be filed and the sale to close within two weeks. Appellant continued to object to the sale on the ground that Jerry Johnson did not exist, but the bankruptcy court held that it had already ruled that the sale could go forward and that the order had been affirmed on appeal. The court also rejected appellant's objection to Sweet's appearance.

On January 20, 2020, Herrell completed the sale of the farm to the Johnson Trust subject to all existing liens and encumbrances and filed a report of sale with the bankruptcy court. Bankr. dkt. #499. The United States Trustee withdrew his abandonment motion on the ground that it had been mooted by the completed sale. Bankr. dkt. #549.

On February 19, 2020, appellant filed a motion seeking to recuse United States Bankruptcy Judge Altenberger on the ground that Judge Altenberger had a "disqualifying

relationship, both personal and professional" with Attorney Sweet, who allegedly had previously represented appellant in the past. Bankr. dkt. #492. He also alleged that, prior to the January 17 hearing, Judge Altenberger had had ex parte communications with Herrell about scheduling the hearing. Also on February 19, 2020, appellant asked the bankruptcy court to apply judicial estoppel against the United States Trustee's decision not to prosecute the abandonment motion. Bankr. dkt. #494.

The bankruptcy court scheduled a final evidentiary hearing on all remaining issues for August 19, 2020, including appellant's motion to dismiss, recusal motion and judicial estoppel motion. Appellant withdrew his motion to dismiss just before the hearing. Bankr. dkt. #587. He did not appear at the hearing, citing health reasons. At the hearing, the bankruptcy court denied appellant's motions regarding recusal and judicial estoppel and approved Herrell's report of sale. On August 20, 2020, the bankruptcy court discharged the trustee and entered the final decree closing the case.

OPINION

In case no. 20-805, dkt. #1, appellant Kelly says in his notice of appeal that he is challenging a series of orders entered by the bankruptcy court, but he only mentions four orders in any detail in his brief in support of his appeal: the denial of his recusal motion, the denial of his opposition to Attorney Sweet's appearance, the denial of his motion to apply judicial estoppel and the final decree closing the case on August 20, 2020. Dkt. #10. Thus, appellant has forfeited his opportunity to challenge any remaining orders by not addressing

7

them in his brief.  M.G. Skinner & Associates Insurance Agency v. Norman-Spencer Agency, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); Mayan v. Weed, 310 Fed. Appx. 38, 41-42 (7th Cir. 2009) (court refused to address issues included in notice of appeal but not argued in brief).  With respect to the four orders identified in his brief, appellant lists 22 "issues" for appeal, which can be grouped into the following categories:  (1) Seidling's fraudulent creation of the Jerry Johnson Revocable Trust and sale of the farm (issue nos. 2-5, 7-8, 10-13 and 16); (2) the denial of appellant's motions regarding recusal of the bankruptcy judge (issue no. 17) and Attorney Sweet's conflict of interest (issues nos. 14-15); (3) the denial of appellant's motion to apply judicial estoppel (issues nos. 9, 18-20); and (4) the violation of his due process rights (issues nos. 1, 6 and 22).  Although appellant states without explanation in issue no. 21 that the bankruptcy court erred "in all of the other ways set forth in Debtor/Appellant's Designation on Appeal to District Court: Statement of Issues to be Presented (Second Filing)," dkt. #10 at 11, he has waived this argument by not developing it or citing any legal authority to support it.

The notice of appeal in case no. 20-806, dkt. #1, refers to several errors allegedly made by the bankruptcy court.  However, the only issue addressed by appellant in his supporting brief is whether the bankruptcy court entered the August 20, 2020 order without proper notice and a fair hearing, in violation of appellant's rights under the due process clause.  I understand this issue to be the same due process challenge raised in case no. 20-805.

8

In a bankruptcy appeal, issues of law are reviewed de novo and factual findings may be set aside only if they are clearly erroneous. Fed. R. Bankr. P. 8013; U.S. Bank National Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC, 138 S. Ct. 960, 966-68 (2018); In re Kempff, 847 F.3d 444, 448 (7th Cir. 2017). Where a mixed question of law and fact requires the court to consider facts as a whole and to balance them against each other, appellate review is for clear error. U.S. Bank, 138 S. Ct. at 968. "In other words, [review] with a serious thumb on the scale for the bankruptcy court." Id.

Applying this legal standard, I will address the four categories of issues below.

A. Alleged Fraud

Appellant contends that the bankruptcy court should not have approved the sale of his farm to the Jerry Johnson Revocable Trust, which he alleges Seidling fraudulently created using the name of a fictitious person. In a related argument, he contends that the bankruptcy court should not have allowed Seidling, whom he says has a criminal record, to file an involuntary bankruptcy petition, practice law and buy and sell real estate. As the United States Trustee points out, appellant unsuccessfully raised these same arguments in the bankruptcy court before that court entered its order approving the sale of the farm in 2017. Although appellant appealed the sale order, he raised only one issue on appeal: whether the bankruptcy court entered the October 2017 order without proper notice and a fair hearing in violation of his rights under the due process clause. Although appellant again asserted his fraud arguments in a motion to dismiss filed in the bankruptcy court in

9

November 2019, he withdrew that motion just before the final hearing on August 19, 2020 hearing. By doing so, appellant waived his right to challenge the sale on the grounds of fraud.

In any event, it is irrelevant whether Seidling is behind the Johnson Trust or Jerry Johnson: regardless of the identity of the purchaser, the result is the same for appellant. The farm was the estate's only asset. As the Court of Appeals for the Seventh Circuit has noted, "debtors often lack standing to challenge bankruptcy orders 'because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor.'" In re GT Automation Group, Inc., 828 F.3d 602, 604 (7th Cir. 2016).

The bankruptcy court did not abuse its discretion in entering the final decree closing appellant's bankruptcy case. The Bankruptcy Code states that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). The record in this case shows that both of these requirements were met.

### B. Recusal and Conflict of Interest Motions

Appellant filed two motions in the bankruptcy court related to impartiality. On January 16, 2020, he objected to Attorney Sweet's entry of an appearance on behalf of the Johnson Trust, arguing that Sweet and his wife, Catherine Furay, Chief Bankruptcy Judge for the Western District of Wisconsin, and D. Alexander Martin, an attorney who worked in Sweet's former law firm, had all represented appellant in his bankruptcy case in the past.

(The record shows that Judge Furay was not the presiding judge in appellant's bankruptcy case.)

At the January 17, 2020 hearing, Sweet explained that his former law firm and legal partner, Judge Furay, had successfully represented appellant in an involuntary bankruptcy action that was dismissed 14 years earlier, in 2006. Case no. 20-805, dkt. #13-1 at 130. In denying the motion, the bankruptcy court explained that Sweet was "not doing anything of significance that involves . . . any ruling on how this bankruptcy case is going to go forward. . . . all he's doing is representing the purchaser, and I don't know that that creates any kind of conflict." Id. at 138.

Appellant fails to cite any law in support of his position. However, Wisconsin Supreme Court Rule 20:1.9 provides that

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client give informed consent, confirmed in a writing signed by the client.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> > (1) whose interests are materially adverse to that person; and
> >
> > (2) about whom the lawyer had acquired information protected by sub. (c) and SCR 20:1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in a writing signed by the client.

Wisconsin's SCR 20:1.9 mirrors Model Rule of Professional Conduct 1.9 in all relevant respects. See also Watkins v. Trans Union, LLC, 869 F.3d 514, 519 (7th Cir. 2017)

11

(internal citation omitted) ("[M]ost federal courts use the ethical rules of the states in which they sit.").

In this instance, it appears from the transcript of the January 17, 2020 hearing that Sweet's former law firm, but not Sweet himself, had defended appellant in an involuntary bankruptcy action, but there is no evidence that Sweet ever acquired confidential information material to the bankruptcy. However, even if Sweet himself had represented appellant 14 years earlier in the involuntary bankruptcy action, as Paul Kelly contends in his affidavit in support of appellant's motion, appellant has failed to explain how the purchaser's interests in buying his former farm were materially adverse to his interests as a debtor.

As the bankruptcy court correctly pointed out, Sweet was representing the purchaser of the farm and had no significant role in the bankruptcy proceedings moving forward. It is the trustee and not the debtor in a Chapter 7 case who represents the bankruptcy estate and has the duty to maximize the value of the estate. In re Mack Industries, Ltd, 606 B.R. 313, 321 (Bankr. N.D. Ill. 2019). The debtor's power is severely limited: his role is to turn over property to the trustee and provide certain information to the trustee and creditors. Id. In addition, long before Sweet sought to represent the Johnson Trust in 2020, the bankruptcy court had approved the sale of the farm to the Johnson Trust for the sum of $44,000, and the order had been affirmed by this court and the court of appeals. Accordingly, the bankruptcy court did not err in denying appellant's motion to preclude Sweet's representation of the Johnson Trust.

Second, on February 19, 2020, appellant filed a motion seeking to recuse Judge Altenberger on the ground that he was a judge in the same district as Sweet's wife and that he had had ex parte communications about scheduling issues with Herrell prior to the January 17, 2020 hearing. A judge must recuse himself "in any proceeding in which his partiality might reasonably be questioned." 28 U.S.C. § 455(a). "[T]he appropriate inquiry under § 455(a) is whether an informed, reasonable observer would doubt the judge's impartiality." In re National Union Fire Insurance Co. of Pittsburgh, Pa., 839 F.2d 1226, 1229 (7th Cir. 1988). No informed and reasonable observer would doubt Judge Altenberger's impartiality in this case.

At the August 19, 2020 hearing, Judge Altenberger noted that he was a visiting judge and, contrary to appellant's contention, was not sharing chambers with Judge Furay. Case no. 20-805, dkt. #13-1 at 149-50. Judge Altenberger also stated that contrary to appellant's allegations, there had been no ex parte communications between him and any of the parties in the case. Id. The fact that a party's attorney is married to a judge in the same district who is not presiding over the same case is not sufficient by itself to create an appearance of partiality and is not a basis for recusal. See In re Gibson, 950 F.3d 919, 927 (7th Cir. 2019) ("The fact that a relative [of the presiding judge] works at a law firm representing a party is not enough" in itself to create an appearance of partiality.).

Moreover, appellant has failed to present any evidence of an improper ex parte communication that was likely to cause him prejudice. Although appellant submitted an affidavit from his father, Paul Kelly, stating that the court had received calls from Herrell

13

about scheduling the January 17, 2020 hearing due to bad weather, bankr. dkt. #493 (referring to court's statement's at case no. 20-805, dkt. #13-1 at 127), routine procedural communications do not warrant recusal. Drobny v. Commissioner of Internal Revenue, 113 F.3d 670, 680 (7th Cir. 1997) ("[A]s a matter of professional ethics, it is well-established that an ex parte communication which does not concern the merits of the case is permissible."). Therefore, the bankruptcy court did not err in denying the recusal motion.

### C. Judicial Estoppel Motion

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion," New Hampshire v. Maine, 532 U.S. 742, 750 (2001). The bankruptcy court's decision regarding judicial estoppel is reviewed for an abuse of discretion, which occurs only "when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." In re Knight-Celotex, LLC, 695 F.3d 714, 721 (7th Cir. 2012) (internal quotation omitted).

In New Hampshire, 532 U.S. at 750-51, the Supreme Court observed that judicial estoppel is "not reducible to any general formulation of principle" but recognized three factors that "typically inform the decision whether to apply the doctrine in a particular case." The three factors are: (1) "a party's later position must be clearly inconsistent with its earlier position;" (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) "the party

14

seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id.

In a motion filed on February 19, 2020, appellant argued that "[j]udicial estoppel requires that the United States Trustee maintain his/her legal position and have the bankruptcy court abandon the bankruptcy estate and close the bankruptcy." Bankr. dkt. #494 at 5. The bankruptcy court denied the motion at the August 19, 2020 hearing, finding that appellant had failed to prove the elements of judicial estoppel because the United States Trustee had not persuaded the court to take a particular position with respect to abandonment during one proceeding and then taken an inconsistent position at a later proceeding. Case no. 20-805, dkt. #13-1 at 154-55. The court pointed out that although negotiations had taken place among the trustees concerning the terms of the sale, the court had never issued a ruling on the abandonment motion before it was withdrawn as moot by the United States Trustee.

The bankruptcy court did not abuse its discretion in failing to apply judicial estoppel to prevent the United States Trustee from changing his initial position with respect to the sale of appellant's farm. Judicial estoppel does not prevent a party from withdrawing a motion that has not yet been adjudicated. "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." New Hampshire, 532 U.S. at 750-51 (internal citation and quotations omitted). See also United States v. Hallahan, 756 F.3d 962, 975 (7th Cir. 2014) (explaining that one relevant factor is whether party against whom estoppel

15

is asserted in later proceeding has succeeded in persuading court in earlier proceeding). As the bankruptcy court noted, it never granted the United States Trustee's abandonment motion and was not misled by the United States Trustee's change in position. Appellant has not shown that the United States Trustee gained any unfair advantage by withdrawing his abandonment motion because the court had no obligation to grant the motion or agree with the initial position taken by the United States Trustee.

D. Due Process Challenge

Appellant contends in case nos. 20-805 and 20-806 that the bankruptcy court violated his due process rights by approving the sale of the farm at the August 19, 2020 hearing without a written opinion and order and by addressing his "requests, motions and objections" telephonically rather than in a court hearing, followed by a written opinion. His argument implicates the due process clause of the Fifth Amendment, which requires that before a party is deprived of property, he is to be given notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" and afforded "an opportunity to present [his] objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Because the purpose of notice is to "permit adequate preparation" for an impending hearing, Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 14 (1978), the notice must "be of such nature as reasonably to convey the required information." Mullane, 339 U.S. at 314. See also In re Olsen, 563 B.R. 899, 905 (Bankr. E.D. Wis. 2017) (applying same standard to real estate sale under § 363 in bankruptcy case).

16

Appellant's primary concern seems to be that the bankruptcy court held telephonic rather than in person hearings and issued several rulings on the record and did not detail them in a written opinion. However, he has not cited any authority for his view that due process requires a court to hold in person hearings or articulate the details of its rulings in a written order, and I have found none. The bankruptcy court entered a written order approving the sale in 2017, explained its rulings with respect to the parties' subsequent motions on the record during the next three years and entered written orders approving the trustee's compensation and dismissing the case on August 20, 2020. Appellant does not allege or present any evidence showing that he did not have notice of any particular hearing or the opportunity to be heard on a particular issue. He participated in all but the August 2020 hearings and was allowed to state his various objections on the record and in writing. I conclude that appellant has not shown that he was deprived of due process.

ORDER

IT IS ORDERED that the appeals filed by appellant Brian Kelly in case no. 20-cv-805, dkt. #4, and case no. 20-cv-806, dkt. #3, are DENIED.

Entered this 6th day of July, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge